**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

John Harris Thaler,

Plaintiff,

v.

City of Mesa, et al.,

Defendants.

No. CV-25-02271-PHX-DWL

**ORDER**

John Harris Thaler ("Plaintiff")—an attorney who is proceeding *pro se*—has filed a 46-page, 243-paragraph complaint in which he alleges that after he uncovered a sprawling criminal conspiracy involving "participation by [the City of Mesa's] elected and appointed officials in money laundering, tax evasion, bribery, financial reporting fraud, wire fraud, bank fraud, Medicaid fraud, tampering with official records, extortion, as well as systemic violations of civil rights," the City of Mesa, two City of Mesa judges, and a City of Mesa police officer (together, "Defendants") engaged in various retaliatory acts against him that violated his federal constitutional rights and state law. (Doc. 1.)

Now pending before the Court is Defendants' motion to dismiss. (Doc. 19.) Additionally, after that motion became fully briefed, Plaintiff sought leave to file a supplemental and amended complaint and a supplemental opposition brief. (Doc. 28.) For the reasons that follow, Defendants' motion to dismiss is granted and Plaintiff's leave request is denied.

…

## BACKGROUND

I. Underlying Factual Allegations

**A. The Complaint**

Plaintiff's complaint accuses various individuals of engaging in criminal conduct. By repeating Plaintiff's allegations below, the Court does not intend to indicate that those individuals in fact engaged in criminal conduct—this portion of the order simply summarizes Plaintiff's allegations.

As alleged, in February 2019, Plaintiff, a lawyer barred in California, began investigating whether the City of Mesa was involved in various forms of criminal activity. (Doc. 1 ¶¶ 1-4, 40.) In the following months, Plaintiff faced multiple threatening situations: someone slashed his tire, and an unknown assailant laced his drink with drugs. (*Id.* ¶¶ 44-45.) Undeterred, Plaintiff continued his investigation and uncovered widespread criminal activity in Mesa, including that his ex-wife, Brittnay Chavez ("Brittnay"), and his ex-mother-in-law, Dawna Chavez ("Dawna"), led a criminal empire, controlling various Mesa public officials through illegal acts. (*Id.* ¶ 26.)

On November 17, 2019, Brittnay decided to enter federal witness protection and gave Plaintiff a portable hard drive and flash drive containing evidence of wrongdoing by Brittnay's family and unnamed Mesa officials. (*Id.* ¶ 49.) Those Mesa officials somehow discovered Brittnay's plan, telling her they would harm her, Plaintiff, and M.T—the shared child of Brittnay and Plaintiff (*id.* ¶ 35)—if she helped prosecute them. (*Id.* ¶ 50.) In response, Brittnay agreed to participate in a four-part scheme in which (1) she would forge a protective order against Plaintiff (the "Brittnay order"); (2) she would abduct M.T; (3) the Mesa police would refuse to allow Plaintiff to see or speak with M.T; and (4) the Mesa police would arrest Plaintiff (based on the forged protective order) if he attempted to see M.T. (*Id.* ¶ 51.) The plan was unsuccessful, as Plaintiff was never arrested despite seeing M.T multiple times in the next month, and in February 2020, Plaintiff received a court order granting him split custody. (*Id.* ¶¶ 56-60.) Because Brittnay lived with Dawna at the time, the court ordered Dawna to facilitate all custody exchanges. (*Id.* ¶ 60.)

Over the next two months, the City of Mesa conducted multiple welfare checks at Plaintiff's residence, and Mesa police gave Plaintiff a traffic ticket for failing to make a complete stop before turning right. (*Id.* ¶¶ 61-64.) Both were done to harass Plaintiff into stopping his investigation into the City's misconduct. (*Id.*)

On April 4, 2020, Brittnay refused to give Plaintiff access to M.T. and Mesa police refused to help, citing an unwritten policy of disregarding requests to enforce custody orders. (*Id.* ¶¶ 65-66.) Nevertheless, a court held that Brittnay had violated the custody order, and Brittnay returned M.T to Plaintiff on April 18, 2020. (*Id.* ¶ 67.)

Next, Brittnay and Dawna falsified a second protective order against Plaintiff (the "Dawna order"), which prevented Plaintiff from seeing Dawna and thus made custody exchanges at Dawna's residence impossible. (*Id.* ¶ 68.) They listed Defendant John D. Tatz ("Judge Tatz"), a City of Mesa judge, as the issuing judge, but Judge Tatz did not learn about the order until after it was issued. (*Id.* ¶¶ 68, 70.) Even though Judge Tatz knew the order was fraudulent, he filed a modified protective order to legitimize the document, of which Plaintiff didn't receive notice. (*Id.* ¶¶ 71-74.) Although Judge Tatz refused multiple requests by Brittnay and Dawna to issue a contempt citation against Plaintiff for violation of the protective orders, he agreed to transfer the case to a new judge who, not knowing the orders were fake, reissued a modified version of the Dawna order. (*Id.* ¶¶ 81-82.) Plaintiff never received any notice of the newly modified Dawna order. (*Id.* ¶¶ 83, 85.) Nevertheless, Defendant Patrick J. Carrol ("Officer Carrol"), a Mesa police officer, signed[1] a declaration stating that Plaintiff was served at the Ellsworth field station of the Mesa Police Department. (*Id.* ¶ 86.) Plaintiff was not in Mesa, let alone at the Ellsworth field station, at the time the declaration states he received service of the Dawna order. (*Id.* ¶ 88.)

On September 19, 2020, Brittnay abducted M.T., and Mesa police thereafter refused Plaintiff's requests to enforce the parties' custody order. (*Id.* ¶¶ 91-93.)

---

[1] Plaintiff has since acknowledged in a declaration that he "do[es] not know whether Officer Carrol personally created the document or whether his electronic signature was applied by someone else." (Doc. 22 at 36.)

On October 12, 2020, Mesa police arrested Plaintiff in his home for violations of the Dawna order. (*Id.* ¶¶ 96-99.) During the arrest, officers unsuccessfully attempted to retrieve the hard drive Brittnay had given Plaintiff. (*Id.*) After releasing Plaintiff the next day, Mesa police began tracking Plaintiff's phone. (*Id.* ¶¶ 98-99.)

On October 18, 2020, Mesa police used Plaintiff's phone location to determine he was not home. (*Id.* ¶ 101.) They again entered his home in an attempt to obtain the hard drive. (*Id.*) Inside, they found an unnamed individual. (*Id.* ¶ 102.) They zip-tied him and beat him severely. (*Id.*) They then left the individual in Plaintiff's garage. (*Id.*)

On November 3, 2020, Mesa police contacted the Phoenix Police Department and claimed that Plaintiff was wanted for questioning. (*Id.* ¶ 104.) Phoenix police went to Plaintiff's residence and demanded to speak with him. (*Id.* ¶ 105.) When Plaintiff refused, Phoenix police followed him, via vehicle and helicopter, for two hours. (*Id.*)

From April 2020 through December 2020, in response to 50 allegedly false reports that Plaintiff violated the protective orders, Mesa police repeatedly called Plaintiff to ask about his communications with Brittnay and Dawna. (*Id.* ¶ 106.) From September 2020 to March 2021, the City of Mesa issued 23 contempt charges against Plaintiff. (*Id.* ¶ 108.) Plaintiff never received service of any of the charges, which allowed the City of Mesa to obtain a warrant for his arrest following his failure to appear and to impose a higher cash bail requirement for his release. (*Id.* ¶¶ 109-11.)

Plaintiff did not discover these charges until April 2021, at which time he filed a motion to quash them. (*Id.* ¶ 112.) In response, an unnamed Mesa judge filed a complaint against Plaintiff with the California State Bar. (*Id.*) At the same time, Plaintiff's case was transferred to Defendant Alicia Lawler ("Judge Lawler"), a City of Mesa judge. (*Id.* ¶ 113.)

On May 9, 2021, while Plaintiff was in Tempe, the City of Mesa informed Tempe police about outstanding warrants against Plaintiff. (*Id.* ¶ 115.) Tempe police dispatched two officers to Plaintiff's location and followed a car they believed to be Plaintiff's. (*Id.* ¶¶ 117, 120.) The officers followed the wrong car and failed to turn on their sirens, but he

still faced a charge of "evading the police" due to the incident. (*Id.* ¶¶ 120-21.)

Plaintiff hired retired attorney Charles Naegle to represent him. (*Id.* ¶ 125.) In May 2021, when Naegle entered a plea of not guilty with a waiver of bail, Judge Lawler briefly adjourned proceedings. (*Id.* ¶ 127.) In the next few minutes, Judge Lawler contacted Judge Tatz and other unnamed Mesa officials for instructions on how to treat Plaintiff's case. (*Id.* ¶ 128.) When she returned, Judge Lawler imposed a $35,000 cash bail. (*Id.* ¶ 128-29.) Judge Lawler refused Naegle's requests to lower the bail amount and scheduled trial for 14 of the 23 charges for August and September 2021. (*Id.* ¶¶ 131-32.) When Naegle reappeared before Judge Lawler on July 7, 2021 in an attempt to quash warrants against Plaintiff, Judge Lawler briefly left the bench, returned, and denied Naegle's request, once again at the instructions of unnamed Mesa officials. (*Id.* ¶ 134.) During a subsequent hearing, Judge Lawler refused to postpone Plaintiff's trial after again excusing herself from the bench. (*Id.* ¶ 136.)

Because Plaintiff believed the charges against him to be illegal, he instructed Naegle to not appear at trial. (*Id.* ¶ 138.) Nevertheless, Judge Lawler ordered Naegle to appear, despite knowing that Naegle had not prepared a case for Plaintiff; that the Mesa prosecutor's office had withheld documents from discovery and falsified evidence of improper communications by Plaintiff with Dawna and Brittnay; and that the underlying protective orders against Plaintiff were fraudulent. (*Id.* ¶¶ 139-42.) Naegle appeared largely out of fear of losing his contract with the City of Mesa to represent indigent defendants. (*Id.* ¶ 143.)

In August 2021, just before trial began, Plaintiff's cardiologist informed him of an unspecified medical condition. (*Id.* ¶ 135.) Because Plaintiff feared that this condition would make him susceptible to a contemporaneous spike in COVID-19 cases, Naegle requested that Judge Lawler allow Plaintiff to appear remotely. (*Id.* ¶ 147.) Judge Lawler denied the request, ordering the trials to proceed without Plaintiff being present. (*Id.*) Plaintiff didn't appear at trial for fear of being arrested and forced to pay the $35,000 cash bail. (*Id.* ¶ 148.)

At trial, Judge Lawler ordered the removal of one of Plaintiff's associates from the courtroom, which stopped Plaintiff from knowing what was happening at his trial. (*Id.* ¶ 149.) Plaintiff was found guilty on all but one of the charges tried. (*Id.* ¶¶ 150, 152.)

On December 27, 2021, Mesa police tracked Plaintiff's cell phone without a warrant, stopped a car in which Plaintiff was a passenger, drew their guns, and took Plaintiff into custody. (*Id.* ¶¶ 154-56.) Judge Tatz was named the presiding judge over the matter, but he transferred the case to Judge Lawler. (*Id.* ¶ 157.) Judge Lawler set a cash bail of $100,000, at the instruction of unspecified Mesa officials. (*Id.* ¶ 158.) Two days later, even though Plaintiff's clients paid his bail, Plaintiff was not released, with Judge Lawler instead having Plaintiff sent to court in Gilbert. (*Id.* ¶¶ 160-61.)

The Gilbert court imposed a bail of $300 based on one outstanding charge against Plaintiff in Gilbert. (*Id.* ¶ 162.) When the court clerk reviewed the bail, however, he left to receive instructions from Judge Lawler. (*Id.* ¶ 163.) The clerk then increased Plaintiff's bail to $75,000. (*Id.*) Plaintiff paid the bail on January 11, 2022. (*Id.* ¶ 165.)

In advance of Plaintiff's sentencing hearing on February 6, 2022, he hired new counsel. (*Id.* ¶ 166.) Judge Lawler, however, ordered Naegle to represent Plaintiff. (*Id.* ¶ 168.) After receiving instructions from Mesa officials, Judge Lawler allowed Plaintiff's new counsel to remain in the courtroom, but she refused to allow them to assist Naegle in representing Plaintiff. (*Id.* ¶ 169.) Judge Lawler sentenced Plaintiff to 180 days' incarceration. (*Id.* ¶ 170.)

Plaintiff appealed the sentence immediately, and after oral argument, Judge Lawler didn't force Plaintiff to serve his sentence while the appeal was pending or increase his bail. (*Id.* ¶¶ 171-72.)

Over the next five months, "Defendants" prepared an incomplete record for the Maricopa County Superior Court Appeals Division, omitting the family court case and the falsified declaration of service of the Dawna order. (*Id.* ¶ 173.) Additionally, due to Naegle's lack of preparation for trial, he failed to make multiple objections necessary for Plaintiff to win on appeal. (*Id.* ¶ 175.) As a consequence, in August 2023, Plaintiff's

sentence was affirmed. (*Id.* ¶ 176.)

When "Defendants" then tried to revoke Plaintiff's bail for his remaining charges, Plaintiff moved to disqualify Judge Lawler from his case. (*Id.* ¶ 177.) Judge Lawler proceeded to hold a hearing despite the disqualification request and revoked Plaintiff's bail. (*Id.* ¶ 178.)

In October 2024, the City of Mesa complied with a court order requiring it to produce the allegedly falsified document that demonstrated service of the Dawna order on Plaintiff, which Plaintiff had never seen previously. (*Id.* ¶ 89.) Then, in December 2024, when Plaintiff presented new evidence that the Dawna order was falsified, "Defendants" refused to set aside his convictions and charges against him based on it. (*Id.* ¶ 90.)

Plaintiff currently has a warrant outstanding for his arrest "attached to a $300,000 cash only bail." (*Id.* ¶ 178.)

B. **The Proposed Additional Facts**

In his request for leave to file an amended complaint, Plaintiff seeks permission to add three new sets of factual allegations:

First, in or around the spring of 2021, Judge Tatz filed a complaint against Plaintiff with the California State Bar, but after Plaintiff responded to the complaint, no action was taken. (Doc. 248-1 ¶¶ 247-48.)[2]

Second, between August 2023 and March 2024, "unknown Mesa officials, acting anonymously" transmitted Plaintiff's conviction materials to an attorney opposing Plaintiff in California state court, who then provided these records to the presiding judge. (*Id.* ¶¶ 249-50.) The judge took no action based on the documents. (*Id.* ¶ 250.) The unspecified Mesa officials also sent the same records to the California State Bar, but after Plaintiff provided a written response, he faced no discipline. (*Id.* ¶¶ 249-51.)

Third, in December 2025, "Defendants" sent files from nine of the 23 criminal cases against Plaintiff to the California State Bar. (*Id.* ¶¶ 253, 259.) The California State Bar

[2] Although the proposed amended complaint is somewhat vague on when Judge Tatz allegedly transmitted the complaint to the California State Bar (Doc. 28-1 ¶¶ 247-48), Plaintiff clarifies in his motion that it occurred "[i]n or about Spring 2021." (Doc. 28 at 4.)

has not acted based on these materials, and Plaintiff does not allege that the California State Bar has indicated it will act based on these materials. (*Id.* ¶ 252-59.)

II. <u>The Claims</u>

In Count One, Plaintiff asserts a claim under 42 U.S.C. § 1983, alleging that Defendants violated his First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (Doc. 1 ¶¶ 179-212.) As damages, Plaintiff seeks at least $500,000 for "various specific losses," including the loss of bail money, loss of income, loss of earnings arising from the premature sale of his house, and attorneys' fees, as well as at least $10 million in "general damages to his health and wellbeing including hypertension, headache, stomachache and Post Traumatic Stress." (*Id.* ¶¶ 210-11.)

In Counts Two and Five, Plaintiff seeks the remedy of injunctive relief. (*Id.* ¶¶ 213-19, 236-243.)

In Count Three, Plaintiff asserts a state-law claim for intentional infliction of emotional distress. (*Id.* ¶¶ 220-27.) As damages, Plaintiff seeks "general damages to his health and wellbeing including hypertension, headache, stomachache and Post Traumatic Stress" as well as economic damages of at least $100,000 arising from the premature sale of his house. (*Id.* ¶¶ 225-26.)

In Count Four, Plaintiff asserts a state-law claim for false imprisonment premised on "[t]he actions of Defendants in arresting and incarcerating Plaintiff on or about October 12, 2020 for approximately 14 hours and then incarcerating Plaintiff from December 27, 2021 through January 11, 2022." (*Id.* ¶¶ 228-35.) As damages, Plaintiff again seeks "general damages to his health and wellbeing including hypertension, headache, stomachache and Post Traumatic Stress." (*Id.* ¶ 234.)

III. <u>Procedural History</u>

This is Plaintiff's third federal lawsuit alleging a widespread criminal conspiracy against him by the City of Mesa and others.

First, in April 2021, Plaintiff filed an 83-page complaint in the Central District of California in which he sued Brittnay, Dawna, the City of Mesa, the City of Phoenix, the

Town of Gilbert, Maricopa County, a private company, and an array of individual defendants. (*Thaler v. Thaler et al.*, No. 2:21-cv-01419-DLR, Doc. 1.) In August 2021, the case was transferred to the District of Arizona and assigned to Judge Rayes. (*Id.*, Doc. 52.) In September 2021, Judge Rayes dismissed the claims against one defendant based on judicial immunity. (*Id.*, Doc. 60.) That same month, Judge Rayes dismissed the claims against all remaining defendants except for Brittnay and Dawna for lack of service. (*Id.*, Doc. 76.) Finally, in June 2022, Judge Rayes dismissed Plaintiff's remaining claims, noting that Plaintiff's "complaint weaves a delusional and fantastical narrative that does not comport with federal pleading standards." (*Id.*, Doc. 90 at 1.)

Second, in May 2022, Plaintiff filed a 68-page complaint in the District of Arizona in which he sued Brittnay, Dawna, the City of Mesa, the Town of Gilbert, Maricopa County, the Arizona Division of Child Support Services, and an array of individual defendants, including Judge Tatz and Judge Lawler. (*Thaler v. Chavez*, No. 2:22-cv-00749-PHX-JAT-JZB, Doc. 1.) In June 2022, Judge Teilborg dismissed the complaint on screening under 28 U.S.C. § 1915(e), explaining that "Plaintiff's 68-page, Complaint is neither short nor plain, and his allegations are not simple, concise, or direct. Most of Plaintiff's allegations are irrelevant to his claims for relief, and the Complaint is argumentative, prolix, replete with redundancy and irrelevancies, and consists largely of immaterial background information. The Complaint therefore fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure, and it will therefore be dismissed with leave to amend." (*Id.*, Doc. 14 at 2-3.) Finally, in November 2022, Judge Teilborg dismissed Plaintiff's amended complaint on screening without leave to amend, concluding that (1) "[t]he crux of Plaintiff's claims is his allegations of a wide-ranging, decades-long racketeering enterprise involving numerous private citizens and City of Mesa officials," but "these allegations are not plausible but are fanciful, fantastic, and delusional and rise to the level of the irrational or the wholly incredible"; (2) many of Plaintiff's claims were "not meaningfully different from his claims . . . in CV 21-01421" and were thus "duplicative and frivolous"; (3) Plaintiff's claims against the Arizona Division of Child

Support Services were barred by the Eleventh Amendment; (4) Plaintiff failed to allege sufficient facts to support a *Monell* claim against any of the county and municipality defendants; (5) Judge Tatz and Judge Lawler were entitled to judicial immunity; (6) certain other individual defendants were entitled to prosecutorial immunity; (7) Plaintiff's false arrest claim was deficient for various reasons; (8) Plaintiff's malicious prosecution claim was deficient for various reasons; (9) Plaintiff's unlawful search and seizure claim was deficient for various reasons; (10) Plaintiff's claim against one defendant was barred by the *Younger* abstention doctrine; and (11) in light of these conclusions, the Court would decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. (*Id.*, Doc. 19.)

Third, on June 30, 2025, Plaintiff initiated this action. (Doc. 1.)

On March 3, 2026, Defendants filed the pending motion to dismiss. (Doc. 19.) That motion later became fully briefed. (Docs. 22, 23.)

Afterward, on March 25, 2026, Plaintiff filed the pending motion for leave to amend and to file a supplemental opposition. (Doc. 28.) Plaintiff attached a clean copy of his proposed amended complaint to the motion. (Doc. 28-1.) Among other things, Plaintiff seeks to add the sixth cause of action (for "Retaliation and Fabrication of Official Records Targeting Plaintiff's Law License—42 U.S.C. § 1983; First and Fourteenth Amendments") and to drop Officer Carrol as a defendant. (*Id.*) Plaintiff's leave request is now fully briefed (Docs. 29, 30) and neither side requested oral argument on either motion.

## DISCUSSION

Although Defendants seek dismissal of Plaintiff's claims on multiple grounds, the Court will limit its analysis to one of those grounds—the statute of limitations—because it is dispositive.[3]

…

…

[3] This approach makes it unnecessary to decide—as Judges Rayes and Teilborg did when reviewing Plaintiff's previous two actions—whether Plaintiff's allegations are too delusional and fantastical to state a claim.

I. Legal Standards

A. **Motion To Dismiss**

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the Court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

Typically, courts "construe *pro se* filings liberally when evaluating them under *Iqbal*," holding them "to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). But that principle is inapplicable here because Plaintiff is a licensed attorney, and "attorneys representing themselves should not be afforded special consideration and do not fall into the category of those 'proceeding without assistance of counsel.'" *Huffman v. Lindgren*, 81 F.4th 1016, 1019 (9th Cir. 2023).

B. **Statute Of Limitations, Accrual, And Tolling**

Count One is a § 1983 claim. "Federal courts in § 1983 actions apply the state statute of limitations from personal-injury claims and borrow the state's tolling rules." *Soto v. Sweetman*, 882 F.3d 865, 871 (9th Cir. 2018). Arizona applies a two-year statute of limitations to personal-injury claims. A.R.S. § 12-542. "[F]ederal, not state, law determines when a civil rights claim accrues. Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."

*TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (internal citations omitted).

Counts Two and Five are requests for injunctive relief. Because "a request for injunctive relief is not a standalone claim, but rather requires some other substantive basis for liability," *Fish v. Aviation*, 2019 WL 690286, *6 (N.D. Cal. 2019), there is no need to conduct an independent statute-of-limitations analysis as to those claims.

Counts Three and Four are state-law claims for intentional infliction of emotional distress and false imprisonment, and all four Defendants are public entities or public employees. As a result, both claims are subject to a one-year statute of limitations. A.R.S. § 12-821. As for accrual, "a cause of action under § 12-821 'accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage.'" *Walden v. Mesa Unified Sch. Dist. #4*, 584 P.3d 543, 552 (Ariz. Ct. App. 2025) (quoting A.R.S. § 12-821.01(B)). "When a cause of action accrued is generally a question of fact for the jury, but it may be decided as a matter of law if the record shows when the plaintiff unquestionably was aware of the necessary facts underlying his or her cause of action." *Cruz v. City of Tucson*, 401 P.3d 1018, 1020-21 (Ariz. Ct. App. 2017) (cleaned up).

II. <u>The Parties' Statute-of-Limitations Arguments</u>

Defendants argue that "[a]ll of Plaintiff's factual allegations arise from events occurring in 2019-2021," yet "Plaintiff did not file this action until June 30, 2025—well beyond the two-year limitations period applicable to each of his claims."[4] (Doc. 19 at 13.)

In response, Plaintiff asserts that Defendants "misapprehend[] both the temporal scope of the violations and the applicable tolling doctrine" and identifies five sometimes overlapping reasons why his claims should not be deemed time-barred: (1) the continuing violations doctrine; (2) the fraudulent concealment doctrine; (3) the discovery rule, as "Plaintiff could not have known the full extent of his injury until: October 2024"; (4) rejecting his § 1983 claim on timeliness grounds would frustrate federal policy; and (5) his

---

[4] Elsewhere, Defendants clarify that the "two-year limitations period" is the maximum limitations period and that a one-year limitations period governs Plaintiff's state-law claims. (Doc. 19 at 13.)

state-law claims are timely once the fraudulent concealment and/or continuing violations doctrines are applied. (Doc. 22 at 9-12.)

In reply, Defendants argue that the continuing violations doctrine is inapplicable because Plaintiff has merely identified "the continuing consequences of a completed act," as "[e]ach 'present injury' Plaintiff identifies is the direct consequence of judicial acts that occurred no later than 2021 and were complete when entered" (Doc. 23 at 5-6); that "[w]hile fraudulent concealment may toll a statute of limitations in limited circumstances," "[a] plaintiff cannot plausibly claim ignorance of facts while simultaneously having filed multiple prior lawsuits accusing defendants of the very concealment now invoked" (*id.* at 3); that the discovery rule is inapplicable because "Plaintiff has consistently alleged that he was never properly served with the modified Order of Protection and that service documents were falsified," so "[t]he fact that Plaintiff claims he did not physically obtain a particular service declaration until 2024 does not alter the operative facts," and "[d]iscovery disputes arising years after the alleged injuries do not transform previously litigated claims into new ones." (*id.* at 3-4); and more broadly that "accepting Plaintiff's theory would eviscerate statutes of limitation, claim-splitting principles, judicial immunity, and finality by allowing perpetual collateral attacks so long as a conviction, warrant, bail condition, or custody order remains in effect" (*id.* at 5).

III. <u>Analysis</u>

As explained below, all of Plaintiff's claims are time-barred and Plaintiff cannot rely on the continuing violations doctrine, the fraudulent concealment doctrine, the discovery rule, or policy considerations to evade the time bar.

**A. Continuing Violations Doctrine**

The Ninth Circuit has applied federal law when evaluating whether a § 1983 claim is timely in light of the continuing violations doctrine. *Knox v. Davis*, 260 F.3d 1009, 1012-13 (9th Cir. 2001). This approach suggests the continuing violations doctrine is an accrual rule, not a tolling rule. *See also Schwindler v. Owens*, 2012 WL 12925713, *3 (N.D. Ga. 2012) ("The continuing violation doctrine concerns the date on which a cause of

action accrues.”). Thus, the Court looks to federal law when analyzing whether Count One is timely in light of the continuing violations doctrine and looks to Arizona law when conducting the same inquiry in relation to Counts Three and Four. *See generally TwoRivers*, 174 F.3d at 991 (“[F]ederal, not state, law determines when a civil rights claim accrues.”); *Walker v. Woodford*, 2008 WL 11337366, *2 (S.D. Cal. 2008) (“The Court applies federal law to decide the accrual date of his federal claims. Because the Court is exercising supplemental jurisdiction over Plaintiff's state law claims, however, . . . the Court applies state law to determine when the claims accrued.”) (citations omitted).

Under federal law, “when a defendant’s conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.” *Bird v. Dep’t of Hum. Servs.*, 935 F.3d 738, 746 (9th Cir. 2019). With that said, a “mere continuing *impact* from past violations is not actionable.” *Knox*, 260 F.3d at 1013 (cleaned up). Meanwhile, under Arizona law, when a plaintiff asserts claims “against a public entity or public employee,” the “plaintiff need not know all the facts underlying a cause of action to trigger accrual. But the plaintiff must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury.” *Watkins v. Arpaio*, 367 P.3d 72, 75-76 (Ariz. Ct. App. 2016) (cleaned up). Put another way, “the victim of a tort by a public entity or employee in Arizona has but one year to sue after he or she knows of injury caused by the tortious act, and that applies regardless of the tort.” *Id.* at 77.

In an effort to invoke the continuing violations doctrine, Plaintiff identifies five “continuing harms”: (1) “Defendants maintain a $300,000 cash-only bail and active arrest warrant against Plaintiff”; (2) “[n]ine criminal charges remain pending based on orders Defendants know to be void”; (3) “[t]hirteen convictions remain on Plaintiff’s record”; (4) Plaintiff continues to be restricted “from exercising court-ordered custody rights”; and (5) “Defendants retain $102,500 in bail money paid under void proceedings.” (Doc. 22 at 10.) This argument is insufficient to trigger the continuing violations doctrine under federal or Arizona law. As Defendants observe, “all of the underlying acts [Plaintiff] challenges—

arrests, prosecutions, orders of protection, and alleged judicial misconduct—occurred no later than 2021, and Plaintiff unquestionably knew of those alleged injuries at the time they occurred." (Doc. 19 at 13.) In reply, Defendants add: "The mere fact that their effects persist does not transform them into ongoing constitutional violations. Plaintiff has long been aware of—and previously challenged—each of these alleged injuries in prior lawsuits that were dismissed." (Doc. 23 at 5.) The Court agrees that, under these circumstances, the continuing violations doctrine is inapplicable. *See generally TwoRivers*, 174 F.3d at 991 ("Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."); *Watkins*, 367 F.3d at 77 ("[T]he victim of a tort by a public entity or employee in Arizona has but one year to sue after he or she knows of injury caused by the tortious act, and that applies regardless of the tort . . . ."). *See also Sansome v. Fairall*, 739 F. App'x 877, 880 (9th Cir. 2018) ("The two-year statute of limitations bars Sansome's claim that Fairall violated his Fourteenth Amendment right to family association by restricting his contact with his children. This claim accrued when Sansome's contact with his children was restricted in November 2011. The ongoing restriction that followed is best characterized as the 'continuing impact' of the initial restriction rather than a continuing violation.").

B. **Fraudulent Concealment**

Fraudulent concealment is a tolling doctrine, not an accrual doctrine. *See, e.g., DeShazo v. Nations Energy Co. Ltd.*, 286 F. App'x 110, 116 (5th Cir. 2008) ("[F]raudulent concealment tolls the relevant statutes of limitations."); *Berry v. Allstate Ins. Co.*, 252 F. Supp. 2d 336, 343 (E.D. Tex. 2003) ("Plaintiffs' allegations that Allstate fraudulently concealed information from them goes to equitable tolling, not accrual."). *See generally Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002) (noting that some courts engage in divergent and inconsistent approaches when addressing "the overlap between accrual and tolling based on fraudulent concealment").[5] Thus, the Court looks to Arizona law

[5] The parties seem to agree that fraudulent concealment is a tolling doctrine. (Doc. 22 at 10; Doc. 23 at 3.)

when determining whether Counts One, Three, and/or Four may be deemed timely in light of the fraudulent concealment doctrine. *Soto*, 882 F.3d at 871 ("Federal courts in § 1983 actions . . . borrow the state's tolling rules.").

"Arizona courts have consistently held that a failure to disclose true facts leading to the plaintiff's injury amounted to fraudulent concealment, and that such action tolls the applicable statute of limitations until the plaintiff discovers or was put on reasonable notice of the breach of trust." *Anson v. Am. Motors Corp.*, 747 P.2d 581, 589 (Ariz. Ct. App. 1987). "[T]he true inquiry . . . [is] whether the defendant has wrongfully concealed facts giving rise to the cause of action in such a manner as to prevent a plaintiff from reasonably discovering a claim exists within the limitations period." *Id.* at 587.

Plaintiff contends the fraudulent concealment doctrine applies here because Defendants (1) fraudulently concealed a forged document showing service of the Dawna order on him, which Defendants did not produce to him until October 2024; and (2) committed fraud by withholding records from the appellate court that reviewed his case. (Doc. 22 at 11.)

This argument fails because, as Defendants correctly note in their reply, Plaintiff "cannot plausibly claim ignorance of facts while simultaneously having filed multiple prior lawsuits accusing defendants of the very concealment now invoked." (Doc. 23 at 3.) Plaintiff raised similar claims in the lawsuit he filed in May 2022. (*Thaler v. Chavez*, No. 2:22-cv-00749-PHX-JAT-JZB, Doc. 1 ¶ 166 ["On December 12, 2019, a phony Order of Protection was created and then filed with the City of Mesa Police Department."]; *id.* ¶ 180 ["When Dawna realized that she had no legal rights to [M.T.] and that Plaintiff could simply come to her house and take his child, Dawna falsified an Order of Protection with a forged signature of the City of Mesa's Presiding Judge, John P. Tatz."]; *id.* ¶ 193(d) ["On or about April 24, 2020, the Mesa Defendants, Dawna and Defendant Tatz falsified a restraining order for Dawna against Plaintiff and did so knowing that the City of Mesa did not have subject matter jurisdiction to issue said order or to enforce it."].) Although Plaintiff may not have known, as of May 2022, every fact related to the Dawna order that

is alleged in this lawsuit—such as Defendants' alleged fabrication of records stating they served that order (Doc. 22 at 11)—Plaintiff still knew enough to bring suit within the limitations period. Thus, it cannot be said that Defendants "wrongfully concealed facts giving rise to the cause of action in such a manner as to prevent a plaintiff from reasonably discovering a claim exists within the limitations period." *Anson*, 747 P.2d at 587. For similar reasons, Defendants' alleged concealment of documents from the appellate court does not support tolling under the fraudulent concealment doctrine. Concealment of documents from an appellate court would not stop Plaintiff from "reasonably discovering a claim exists within the limitations period." *Id.*

C. **Discovery Rule**

The discovery rule is an accrual rule, not a tolling doctrine. *See generally Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("We must first distinguish between the accrual of the plaintiff's claim and the tolling of the statute of limitations . . . . The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the 'discovery rule' of federal common law, which is read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law) in the absence of a contrary directive from Congress."). Thus, the Court looks to federal law when analyzing whether Count One is timely in light of the discovery rule and looks to Arizona law when conducting the same inquiry in relation to Counts Three and Four. *Lukovsky v. City and Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) ("Plaintiffs frame their argument in terms of the 'discovery rule,' which postpones the beginning of the limitations period from the date the plaintiff is actually injured to the date when he discovers (or reasonably should discover) he has been injured. However, this rule is already incorporated into federal accrual law."); *Burton v. United Sercives Automobile Ass'n*, 2024 WL 5358437, *2 (D. Or. 2024) ("[T]his is a diversity case alleging state law fraud and other claims, therefore the Oregon discovery rule must be applied.").

"Under federal law, the 'discovery rule' typically governs the accrual of § 1983

claims so that a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Bird*, 935 F.3d at 743. *See also Lukovsky*, 535 F.3d at 1049 ("[T]he claim accrues upon awareness of the actual injury . . . and not when the plaintiff suspects a legal wrong."). Similarly, under Arizona law, "[t]he discovery rule provides that a statute of limitations is tolled until the plaintiff knows or with reasonable diligence should know the facts underlying the cause. A plaintiff, however, need not know all the facts underlying a cause of action to trigger accrual. The ability to identify that a wrong occurred and caused injury is sufficient." *Satamian v. Great Divide Ins. Co.*, 545 P.3d 918, 925 (Ariz. 2024) (cleaned up).

Plaintiff argues his claims did not accrue until he learned facts necessary to discover "the full extent of his injury," including "[d]iscovery of the falsified Declaration of Service proving lack of personal jurisdiction over 13 convictions and 9 pending charges" in October 2024; "Defendants' objection to the subpoena, revealing their knowledge of the fraud" in June 2024; and "[c]ontinued reaffirmation of void sentences and bail" by Defendants from August 2023 to the present. (Doc. 22 at 11-12.) This argument is unavailing. Again, the inquiry under federal law is whether a plaintiff "knows or has reason to know of the injury which is the basis of the action." *Bird*, 935 F.3d at 743. Similarly, under Arizona law, a plaintiff "need not know all the facts underlying a cause of action to trigger accrual. The ability to identify that a wrong occurred and caused injury is sufficient." *Satamian*, 545 P.3d at 925. Here, Plaintiff was aware by no later than May 2022—when he filed his complaint in *Thaler v. Chavez*, No. 2:22-cv-00749-PHX-JAT-JZB—that he had been injured by Defendants' challenged conduct.

D. **Policy Considerations**

In § 1983 actions, courts "adopt a local time limitation as federal law *if it is not inconsistent with federal law or policy to do so*." *Wilson v. Garcia*, 471 U.S. 261, 261 (1985) (emphasis added). Plaintiff argues that applying Arizona's two-year limitations period to his § 1983 claim would "frustrate federal policy." (Doc. 22 at 12.) According to Plaintiff, "[w]here, as here, state actors deliberately concealed their constitutional

violations through document fabrication and suppression, rigid application of limitations would reward and perpetuate the very conduct § 1983 was designed to remedy." (*Id.*)

This argument lacks merit. The application of a state limitations period is consistent with the federal policy underlying § 1983 when it merely "focuses a plaintiff's claims against a defendant, thereby economizing judicial resources while preserving the plaintiff's ability to bring the claims." *Canatella v. Van De Camp*, 486 F.3d 1128, 1133 (9th Cir. 2007) (cleaned up). Here, Plaintiff had ample opportunity to assert a § 1983 claim against Defendants. Indeed, this is Plaintiff's third lawsuit arising from the same overarching set of facts and complaints (and the second one in which he has sued the City of Mesa, Judge Tatz, and Judge Lawler). Thus, a "rigid application of limitations" did not prevent Plaintiff from bringing his current § 1983 claim.

### E. Remaining Arguments Regarding State-Law Claims

Plaintiff contends that "[f]alse imprisonment accrues on release from confinement. Plaintiff was last released January 11, 2022 . . . within the applicable period given fraudulent concealment." (Doc. 22 at 12.) This claim fails because, as discussed above, the fraudulent concealment doctrine is inapplicable here. As for his intentional infliction of emotional distress claim, Plaintiff simply incorporates his continuing violations doctrine and fraudulent concealment arguments (*id.*), which fail for the reasons discussed above.

## IV. <u>Leave To Amend And Supplement</u>

Plaintiff seeks leave to amend and/or supplement to add a new § 1983 claim based on Defendants' alleged transmission of his criminal convictions to the California State Bar. (Doc. 28 at 4-5.) The amendment request is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* Thus, Plaintiff's amendment request should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Meanwhile, the supplementation request is governed by Rule 15(d) of the Federal Rules of Civil Procedure, which provides in relevant part that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense." *Id.* Although the supplementation of pleadings under Rule 15(d) is "a tool of judicial economy and convenience" that is "favored," *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988), a supplementation request may be denied where the proposed new facts would not "alter the dismissal analysis." *Cuagliotti v. City of Mesa*, 2026 WL 2267479, *15 (D. Ariz. 2026). "A motion for permission to serve and file a supplemental pleading is addressed to the sound discretion of the court." *Weekes v. Atl. Nat. Ins. Co.*, 370 F.2d 264, 272 (9th Cir. 1966).

Plaintiff argues his proposed new § 1983 claim should be allowed because it is based on facts that arose "after the filing of the original complaint and, in significant part, after briefing on the Motion to Dismiss"; demonstrates "a continuation of the very pattern of retaliation, abuse of process, and fabrication of official records alleged throughout the Complaint"; was sought without undue delay or bad faith; does not prejudice Defendants; is not futile because it "easily state[s] plausible claims under the First and Fourteenth Amendments"; and "directly undermine[s] Defendants' dismissal arguments." (Doc. 28 at 6-7.) Defendants oppose the amendment and supplementation request on a variety of grounds, including that the proposed new § 1983 claim challenges acts that were required under California law, would be futile, does not "bear a meaningful and legally relevant relationship to an existing, viable claim," would prejudice Defendants, and has not been properly served. (Doc. 29.) In reply, Plaintiff argues that his proposed new claim raises novel issues and "plausibly alleges a continuing course of conduct, including later transmissions of Mesa records and later consequences from those records" and that Defendants' service arguments are "unsupported and a diversion." (Doc. 30.)

Plaintiff's amendment and supplementation request is denied. As an initial matter,

Plaintiff failed to comply with LRCiv 15.1(a), which provides that "[a] party who moves for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added." *Id.* Plaintiff did not provide such a document here—he only provided a "clean" version of his proposed new complaint. *See generally Young v. Nooth*, 539 F. App'x 710, 711 (9th Cir. 2013) ("The district court did not abuse its discretion in denying Young leave to amend his complaint because Young failed to attach a proposed amended complaint as required by local rule."); *Eldridge v. Schroeder*, 2016 WL 354868, at *2 (D. Ariz. 2016) ("The District Court of Arizona routinely denies motions for leave to amend for failure to comply with LRCiv 15.1(a).").

Plaintiff's amendment and supplementation request also fails on the merits. As noted, Plaintiff seeks to add three new sets of factual allegations: (1) in or around the spring of 2021, Judge Tatz filed a complaint against Plaintiff with the California State Bar, which resulted in no discipline; (2) "in or about August 2023 through March 2024 . . . unknown Mesa officials . . . transmitted Mesa 'conviction' materials to [Plaintiff's] opposing counsel [in a California state court case] and to the State Bar of California"; and (3) "in or about December 2025 . . . Defendants gathered a subset of internal files from the twenty-three Mesa criminal cases they had amassed against Plaintiff and transmitted those materials to the State Bar of California, again complaining about Plaintiff and seeking to damage his license." (Doc. 28-1 ¶¶ 247-53.)

Beginning with the first new allegation, Plaintiff fails to explain why he did not include it in the original iteration of the complaint he filed in March 2025. Indeed, Plaintiff presumably could have raised this allegation in both of his earlier two lawsuits, given that it pertains to alleged conduct that occurred in the spring of 2021. As noted, one ground on which an amendment request may be denied is undue delay, and the point of supplementation is to add new events that occurred after the date of the pleading to be supplemented. In his motion-to-amend briefing, Plaintiff makes no effort to defend his

delay in adding this particular allegation—his reply does not address the "Judge Tatz bar complaint" allegation and instead focuses on his other two new categories of factual allegations. (Doc. 30 at 4 ["Plaintiff is not merely recycling old allegations in a vacuum; Plaintiff seeks to supplement based on later events involving transmission of Mesa records to California bar authorities after the operative complaint was filed."].) Thus, this aspect of Plaintiff's amendment and supplementation request is denied based on undue delay.

As for the other two new categories of factual allegations, a threshold problem is that Plaintiff does not attribute the challenged conduct to any particular individual. Instead, Plaintiff seeks to allege that (1) between August 2023 and March 2024, "unknown Mesa officials, acting anonymously and in their capacity as employees of Defendant City of Mesa, discovered Plaintiff's representation and transmitted Mesa 'conviction' materials to opposing counsel . . . and to the State Bar of California" (Doc. 248-1 ¶ 249); and (2) in December 2025, unspecified "Defendants gathered a subset of internal files from the twenty-three Mesa criminal cases they had amassed against Plaintiff and transmitted those materials to the State Bar of California, again complaining about Plaintiff and seeking to damage his license" (*id.* ¶ 253). Absent is any well-pleaded allegation that Judge Tatz or Judge Lawler—the only two individual defendants named in the proposed amended complaint[6]—had anything to do with either transmission.[7] That leaves the City of Mesa, and although proposed paragraph 249 identifies the transmitting parties as unspecified City of Mesa employees, it doesn't follow that the City of Mesa is liable under § 1983 for their alleged conduct. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019) ("[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or

---

[6] The proposed amended complaint would drop Officer Carrol as a defendant.

[7] The allegation in proposed paragraph 253 that "Defendants" were responsible for the December 2025 transmission is insufficient to plead claims against Judge Tatz or Judge Lawler. *Houweling Intellectual Props. Inc. v. Mountain High Greenhouse Construction LLC*, 2024 WL 1675476, *4 (D. Ariz. 2024) ("Time and again, courts (including this Court) have concluded that a complaint cannot lump all of the defendants together as a collective whole—'Defendants'—without specifically alleging the role that each defendant played in causing Plaintiff's alleged injury.") (cleaned up) (collecting cases).

discipline; or (4) a decision or act by a final policymaker. A municipality may not, however, be sued under a respondeat superior theory. A plaintiff must therefore show deliberate action attributable to the municipality that directly caused a deprivation of federal rights. Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.") (cleaned up). In their response to the motion to amend and supplement, Defendants specifically identify the lack of plausible *Monell*-related allegations as an independent basis for denying the motion (Doc. 29 at 7), and Plaintiff makes no effort to address those arguments in his reply. The Court thus agrees with Defendants that, on this record, granting leave to amend would be futile, as would supplementation. This conclusion obviates the need to address Defendants' other futility arguments (which, to be clear, also have force).

Finally, Plaintiff's request for "leave to file a supplemental opposition to Defendants' pending Motion to Dismiss" (Doc. 28 at 2) is moot because Plaintiff only sought such leave to discuss the new facts raised in his proposed (and now rejected) supplemental and amended complaint.

Accordingly,

**IT IS ORDERED** that:

1. Defendants' motion to dismiss (Doc. 19) is **granted**.
2. Plaintiff's leave request (Doc. 28) is **denied**.
3. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 14th day of October, 2026.

Dominic W. Lanza
United States District Judge